UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IAN ANTHONY BULANDR, <br><br>　　　Plaintiff, <br><br>　v. <br><br>PELICAN BAY STATE PRISON, <br><br>　　　Defendant. | Case No. 16-cv-2405-TEH <br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT <br><br>Dkt No. 17 |

Plaintiff Ian Bulandr, a state prisoner, filed this pro se action under 42 U.S.C. § 1983. This case proceeds under the first amended complaint (Docket No. 10) against Defendants Nurse Risenhoover and Dr. Bal with allegations that they failed to properly treat Plaintiff's eczema like rashes in violation of the Eighth Amendment. Defendants filed a motion for summary judgment stating that Plaintiff failed to exhaust his administrative remedies, Defendants were not deliberately indifferent to his serious medical needs and Defendants did not personally participate in the alleged acts. Plaintiff filed an opposition and Defendants filed a reply. For the reasons that follow, Defendants' motion is GRANTED.

I

A

Summary judgment is properly granted when no genuine disputes of material fact remain and when, viewing the evidence

most favorably to the nonmoving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56(c); Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987). The moving party bears the burden of showing there is no material factual dispute. Celotex, 477 U.S. at 331. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Id. at 324; Eisenberg, 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1559 (9th Cir. 1991).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the moving party meets its burden of production, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir.), cert. denied, 502 U.S. 994 (1991); Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105 (9th Cir. 2000).

Material facts that would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Questions of fact regarding immaterial issues

cannot defeat a motion for summary judgment. Reynolds v. County of San Diego, 84 F.3d 1162, 1168-70 (9th Cir. 1996), rev'd on other grounds by Acri v. Varian Assocs., Inc., 114 F.3d 999 (9th Cir. 1997). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.

B

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and no longer left to the discretion of the district court. Woodford v. Ngo, 548 U.S. 81, 84 (2006) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards." Id. at 85. Even when the relief sought cannot be granted by the administrative process, i.e., monetary damages, a prisoner must still exhaust administrative remedies. Id. at 85-86 (citing Booth, 532 U.S. at 734).

The PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies. Id. at 93. This requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Id. at 83-84. "The text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means

3

proper exhaustion." Id. at 93. Therefore, the PLRA exhaustion requirement requires proper exhaustion. Id. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. A prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court. See id. at 87; see also Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005) (holding that, to exhaust remedies, a prisoner must file appeals in the place, and at the time, the prison's administrative rules require).

The California Department of Corrections and Rehabilitation ("CDCR") provides that inmates and parolees "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). "Three levels of formal review are provided, and a prisoner exhausts the grievance process when he completes the third level." Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010).

C

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136

4

(9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. Id. at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. Id. at 1059-60.

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." Id. If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002). "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

## II

### A

On January 6, 2016, Plaintiff submitted an inmate appeal regarding the medical condition that is the subject of this action. Motion for Summary Judgment ("MSJ"), Robinson Decl. ¶ 8. The inmate appeal was given the log number PBSP HC 16029491. Id. On January 28, 2016, a nondefendant nurse interviewed Plaintiff regarding the appeal. Id. ¶ 9. Defendant Dr. Bal reviewed the appeal at the first level of review and denied it. Id. ¶ 10. Dr. Bal noted that: (1) Plaintiff had been seen by his doctor on August 4, 2015 and January 25, 2016, and the doctor did not recommend a referral to a specialist; (2) the doctor reviewed Plaintiff's June 8, 2015, skin pathology report which revealed that the skin condition was eczema and that no medication treatment was medically indicated; and (3) on November 25, 2015, Plaintiff was examined by a nurse who provided him with instructions to treat his skin condition, including using Selenium Sulfide 1% shampoo, and referred Plaintiff for a follow-up appointment in 30 days, but on December 23, 2015, Plaintiff refused the follow-up appointment. Id.

Plaintiff did not further appeal the denial to either the second or third level of review. Id. ¶ 11.

### B

Defendant Risenhoover is a certified family nurse practitioner and has been licensed to practice in California since 1981. MSJ, Risenhoover Decl. ¶ 1. Her responsibilities at the prison include providing primary health care services to inmates. Id. ¶ 3.

6

Plaintiff has been diagnosed with hypothyroidism (thyroid hormone deficiency). Id. ¶ 7. Symptoms of hypothyroidism can include skin rash, such as eczema. Since August 2013, Risenhoover has assisted in administering Plaintiff's prescribed hypothyroid medication, Levothyroxine Sodium 88 mcg. Id. On February 25, 2014, Risenhoover examined Plaintiff who stated he had noticed a dry rash on his shins. Id. ¶ 8. He further stated that the rash did not itch, was not painful, did not bother him and he had been applying lotion on it. Risenhoover reviewed Plaintiff's lab tests, including his Thyroid Stimulating Hormone ("TSH") test, which was within normal range. Plaintiff had a small, superficial, flaky patch of pinkish dry skin approximately one cm in size with no swelling, pustule, erythema (redness) or tenderness. She advised Plaintiff to manage the rash conservatively by avoiding excess soap and applying lotion, and to return to the clinic if it did not resolve itself. Plaintiff agreed with the treatment plan. Id.

On April 6, 2014, Plaintiff submitted a medical request stating, "I have a bad skin rash on my left leg, it itches & has been present for more than a month." Opposition (Docket No. 23), Ex. K1.

Risenhoover saw Plaintiff again for the rash on his shins on May 29, 2014. Id. ¶ 9. Plaintiff stated that another nurse had provided him with hydrocortisone cream, (1%) which had helped with the itching, but he had run out. He stated he had not injured his shins or knees, had no fever or chills and had no pain. Risenhoover observed superficial skin irritations on his shins consisting of an abrasion on his left shin and healed dry

7

skin on his right shin. There was no sign of infection, so she told him to continue the conservative treatment, and she provided an antibiotic ointment to apply to his left shin. She suggested a biopsy if the symptoms did not improve. Id.

Plaintiff submitted medical requests for the rash on July 31, 2014 and October 18, 2014, noting that the creams had not been working. Opposition, Exs. H1-H8, I1. Plaintiff was seen by other medical staff and provided different creams for the rash. Id.; Risenhoover Decl. ¶¶ 10-11.

Risenhoover reviewed a medical note regarding Plaintiff on April 2, 2015. Id. ¶ 12. She ordered a skin biopsy and denied a steroid cream until the biopsy results were received. She instructed Plaintiff to keep his skin clean and dry. Id. The result of the skin biopsy was benign (noncancerous) and stated, "Right Inner Shin: Superficial Mildly Spongiotic Psoriasiform Lympho-hostiocytic perivascular dermatitis with focal overlying parakeratic crust (see comment). Comment: the histologic features favor chronic excematous deramtitis such as chronic nummular or seborrheic dermatitis rather than psoriasis. Correlation with clinical findings & appropriate follow-up are recommended." Id. ¶ 14.

Plaintiff submitted a medical request on April 16, 2015, regarding the rash, which he noted as bleeding, scabbed and very dry. Opposition Ex. E1.

On June 19, 2015, Risenhoover reviewed the biopsy results with Plaintiff. Risenhoover Decl. ¶ 15. Plaintiff stated that he thought the rash was part of his thyroid problem, and that it did not hurt and just itched. Risenhoover continued Plaintiff on

8

levothyroxine, 88 mcg daily.

Risenhoover saw Plaintiff again on August 4, 2015, for his hypothyroid follow up. Id. ¶ 16. Plaintiff's TSH lab result was within normal range. Risenhoover observed that on his left shin he had a superficial, flaky patch of pinkish dry skin approximately 22 x 12 cm with superficial cracking and no bleeding, erythema, redness, pustules, tenderness or increased heat. On his lower leg he had a small patch of dry skin about 5 x 5 cm and a few other similarly sized patches. Plaintiff also stated he wanted to see a dermatologist. Id. Later on August 4, 2015, Risenhoover reviewed Plaintiff's skin biopsy results with a nondefendant doctor. Id. ¶ 17. The doctor stated that because the rash was not psoriasis and was diagnosed as eczema, no treatment cream was medically indicated nor was a referral to a dermatologist needed. Id.

Risenhoover met with Plaintiff on January 25, 2016 and July 22, 2016, for hypothyroid follow-up appointments. Id. ¶¶ 19-20. His lab work was normal, and Plaintiff stated that his rashes did not bother him and he was not in pain. Id. Risenhoover had one more appointment with Plaintiff on July 26, 2016, where Plaintiff's TSH lab results were reviewed, and they were within normal range. Id. ¶ 21.

Defendant Dr. Bal is a physician and surgeon licensed to practice in California. MSJ, Bal Decl. ¶ 1. On February 12, 2016, Dr. Bal reviewed the inmate appeal Plaintiff submitted on January 6, 2016, which was discussed above. Id. ¶ 7. Plaintiff sought to be seen by a specialist and to see if a different medicine such as Otzela or Humira would be appropriate. Per

procedure Plaintiff was interviewed by a nondefendant nurse. Id. ¶ 8. Dr. Bal denied the appeal as discussed above. Other than reviewing the appeal, Dr. Bal had no other involvement with Plaintiff's medical care. Id. ¶ 12.

### III

### A

It is undisputed that Plaintiff only submitted an inmate appeal to the first level and that he failed to appeal to the second or third level of review. Plaintiff argues that the denial of his first-level appeal denied all of his requests for remedies and stated that granting the requests was beyond the scope of the appeals. Docket No. 23 at 5. Plaintiff states that he understood this to mean that his administrative remedies were exhausted. Id.

A review of the entire first-level response demonstrates that Plaintiff took the isolated portion of the response out of context. The first-level response set forth in detail the reasons why each of Plaintiff's requests was denied. MSJ, Robinson Decl. Ex. A at PBSP-1. Plaintiff presented three specific points: 1) to be seen by a specialist; 2) to see if certain medications such as Otezla or Humira would be helpful; and 3) that if he does not receive appropriate treatment he will seek monetary compensation in a civil lawsuit. Id. at PBSP-6,8.

The first-level response addressed each request in turn and presented specific facts and arguments why Plaintiff's appeal was denied. Id. at PBSP-1-2. The majority of the response referenced Plaintiff's requests to be seen by a specialist and for specific medication. Id. The response did include one

sentence that stated, "It is beyond the scope of the appeals process to award monetary compensation. However, you may search your law library for the government code." Id. at PBSP-2. The response further stated, "A thorough review of your request presented in this complaint has been completed at the first level and is denied." Id. The appeal form that Plaintiff originally completed also stated, "If you are dissatisfied with the First Level Response, explain the reason below, attach supporting documents and submit to the Health Care Appeals Coordinator for processing within 30 calendar days of receipt of response." Id. at PBSP-5. The appeal form also presents the same instructions regarding what to do if the prisoner is dissatisfied with the Second-Level Response. Id. Plaintiff had been in possession of this form which he attached to his original complaint. Docket No. 1 at 15.

Even though Plaintiff sought monetary relief, which was beyond the scope of the inmate appeal system, Plaintiff was required to fully exhaust the claim. Woodford, 548 U.S. at 85-86. That the administrative procedure cannot result in the particular form of relief requested by Plaintiff does not excuse exhaustion because some sort of relief or responsive action may result from the grievance. See Booth, 532 U.S. at 737; see also Porter v. Nussle, 534 U.S. 516, 525 (2002) (purposes of exhaustion requirement include allowing prison to take responsive action, filtering out frivolous cases, and creating administrative records).

However, the Ninth Circuit has held that an administrative remedy is not available if prison officials inform the prisoner

11

that he cannot file a grievance. See Williams v. Paramo, 775 F.3d 1182, 1191-92 (9th Cir. 2015) (prisoner's statements that she was thwarted from filing a grievance and appeal meet burden of production in showing that administrative remedies were not available to her). Similarly, a prisoner need not exhaust further levels of review if he has either received all the remedies that are "available" at an intermediate level of review, or has been reliably informed by an administrator that no more remedies are available. See also Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005).

The facts of this case are distinguishable from Williams and Brown. There are no allegations that any prison official verbally told Plaintiff he did not need to further appeal his medical claims. The form itself noted that if Plaintiff was dissatisfied with the first-level response he could appeal it by explaining the reasons for his dissatisfaction and submitting it to the Health Care Appeals Coordinator. While there was one sentence in the first-level response that stated monetary compensation was beyond the scope of the appeals process, the majority of the response set forth reasons why Plaintiff's specific requests for medical care were denied. Despite these denials related to his specific medical requests, Plaintiff chose not to further appeal. For all these reasons, Defendants' motion for summary judgment for failure to exhaust is granted.

**B**

Even assuming Plaintiff could continue with these unexhausted claims, Defendants are entitled to summary judgment on the merits. Assuming for purposes of this motion that

12

Plaintiff's rash qualifies as a serious medical need, the undisputed facts demonstrate that Defendants were not deliberately indifferent in the treatment they provided.

Risenhoover provided a great deal of medical care over an extended period of time and Plaintiff was also treated by other medical staff. Plaintiff was repeatedly seen for his rash and provided different creams and ointments to treat it. When the rash did not resolve itself, a biopsy was taken which indicated it was noncancerous. Moreover, medical staff noted that rashes can appear related to Plaintiff's hypothyroidism, which was being routinely treated, and his lab results were within the normal range. Dr. Bal's only involvement was denying Plaintiff's requests to be seen by a specialist and for different medication.

Plaintiff disagreed with the treatment and the denial of a referral to a specialist; however, this difference of opinion does not demonstrate deliberate indifference. Franklin, 662 F.2d at 1344. Even though Plaintiff was denied requests for different medication and a specialist, he still received regular and routine medical treatment. Plaintiff concedes that he was provided a treatment plan. Opposition at 2.

Defendants have met their burden in showing that there is no genuine dispute of material fact and they are entitled to summary judgment. Plaintiff has failed to meet his burden in demonstrating that Defendants were aware of a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps. The undisputed facts show that Defendants took reasonable steps to treat Plaintiff's medical needs and they are

entitled to summary judgment.[1]

## IV

For the foregoing reasons, the Court hereby orders as follows:

1. Defendants' motion for summary judgment (Docket No. 17) is GRANTED.

2. The Clerk shall close the file. This order terminates Docket No. 17.

IT IS SO ORDERED.

Dated: 6/2/2017

_____
THELTON E. HENDERSON
United States District Judge

G:\PRO-SE\TEH\CR.16\Bulandr2405.sj.docx

---

[1] Because the Court has not found a constitutional violation and Plaintiff failed to exhaust his administrative remedies, the Court will not address the argument that Defendants did not personally participate in the alleged acts.

14